# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2648

_____

| | | |
|---|---|---|
| John Etukakpan, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| St. Jude Medical, Inc., a Minnesota | * | |
| corporation, | * | [UNPUBLISHED] |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: December 13, 2000

Filed: July 9, 2001

_____

Before McMILLIAN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

PER CURIAM.

John Etukakpan appeals from the district court's[1] order granting summary judgment in favor of St. Jude Medical, Inc. on his claims of discrimination and retaliation in violation of Title VII and the Minnesota Human Rights Act. He argues that there is a genuine dispute of material fact with respect to these claims, that he

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

established that he was qualified for his position, and that St. Jude's proffered reasons for his discharge are pretextual.  We affirm.

Etukakpan, who is black and Nigerian, was employed by St. Jude from March 23, 1992 until July 12, 1995.  His work history with St. Jude was marked by confrontations and difficulty in getting along with co-workers.

In October 1993, he was involved in an altercation with John Horwath and suspended for two days.  Horwath, who is white, was fired.  Etukakpan filed a charge of race and national origin discrimination with the EEOC in December 1993, alleging, among other things, that his suspension for this incident was discriminatory.

In February 1994, co-workers sent an anonymous memo to five managers and supervisors complaining that Etukakpan and another employee caused tension in the workplace by intimidating, harassing, and manipulating co-workers.  Follow-up interviews conducted by St. Jude revealed that Etukakpan had a bad attitude, belittled others, and was abrasive.  St. Jude hired an outside consulting firm to assess Etukakpan's work group, and it concluded, "Conflict has centered around one employee, with other factors clearly contributing to the conflicts and tension."  The outside firm then conducted training and team-building workshops to improve staff relations.

Etukakpan received a number of formal warnings about his behavior.  On December 6, 1994, he received a verbal warning for insubordination for comments he allegedly made to Christine Zabel, a Senior Human Resources Representatives at St. Jude.  On February 16, 1995, he received a written warning for abusive remarks he allegedly made to Paula Hutton, Manager of Corporate Benefits. Etukakpan contends that he did not use abusive language toward either Zabel or Hutton.  He received another written warning on May 18, 1995 for not requesting or receiving prior approval for a two-day absence.  This warning notified him that it was his third warning for work

rule violations within the past twelve months and that any future absences without prior approval or other violations would result in his termination.

On July 11, 1995, he was absent from St. Jude for at least forty-three minutes, which is longer than the allotted thirty-minute dinner break. Etukakpan was terminated the next day for abandoning his work station.

Etukakpan filed another charge with the EEOC, and he also filed a complaint in state court. After the EEOC determined that St. Jude discriminated against Etukakpan, he filed an amended complaint, adding a Title VII claim. St. Jude removed the action to federal court. Etukakpan's complaint alleged breach of contract; breach of the implied covenant of good faith and fair dealing; defamation; discriminatory discharge; discrimination in terms, conditions, and privileges of employment; and retaliation. Etukakpan stipulated to a dismissal with prejudice of his defamation claim. The district court granted summary judgment to St. Jude on the remaining claims.[2]

The court first held that Etukakpan failed to establish a prima facie case of discrimination because his inability to get along with his co-workers and his violation of company rules rendered him unqualified for his position. Etukakpan argued that there was no evidence that he was failing to meet expectations regarding co-worker relations at the time of his discharge in July since he had received no discipline related to this issue since February. He also filed an affidavit denying that he used abusive language in his conversations with Zabel and Hutton. The district court held that this denial did not create a genuine issue of material fact precluding summary judgment and that the record was replete with evidence of his poor interpersonal skills and harassing behavior. The court pointed to the memorandum sent to Etukakpan's managers and

---

[2]Because Etukakpan has not appealed the grant of summary judgment on his breach of contract and breach of the covenant of good faith and fair dealing claims, we need not discuss the district court's resolution of these claims.

supervisors and to the outside consulting group's conclusion that the conflicts centered around one employee. The court also pointed to Zabel's and Hutton's written reports of Etukakpan's inappropriate behavior toward them. Although the incident precipitating his dismissal did not involve his alleged inability to interact with others, it was the fourth incident in which he received a verbal or written reprimand in accord with St. Jude's disciplinary policies.

The district court went on to hold that even if Etukakpan had established a prima facie case, St. Jude had proffered a legitimate, non-discriminatory reason for his discharge and Etukakpan had not shown pretext. The four disciplinary infractions were the basis for his dismissal, and the court found nothing in the record to suggest that Etukakpan's race or national origin was a factor in his termination. The district court rejected Etukakpan's efforts to show pretext based on evidence that, two years before his discharge, two white employees abandoned their work station for an extended dinner break and received written warnings and two-day suspensions without pay. The district court found that these employees were not similarly situated to Etukakpan because neither had any prior disciplinary notices. The district court also observed that the suspensions for their first-time offenses were consistent with Etukakpan's suspension for his first offense in October 1993. Because there was no evidence of discrimination based on race or national origin, the district court granted summary judgment to St. Jude on this claim.

On Etukakpan's retaliation claim, the district court found that there was no evidence of a causal connection between Etukakpan's filing of a charge of discrimination and his termination. The district court concluded that Etukakpan had failed to set forth any specific facts sufficient to raise a genuine issue for trial and granted St. Jude's motion for summary judgment on this claim.

We review a grant of summary judgment de novo. <u>Cooper v. Olin Corp.</u>, 246 F.3d 1083, 1087 (8th Cir. 2001). Summary judgment is appropriate when the evidence,

viewed in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Id.; Fed. R. Civ. P. 56(c).

For purposes of this appeal, we assume that Etukakpan has established a prima facie case of discrimination. Etukakpan argues that St. Jude's proffered reason for his discharge is pretextual because St. Jude now asserts that he was fired for his poor interpersonal skills while his termination notice identifies job abandonment as the reason for his discharge. As we read St. Jude's brief, it asserts that Etukakpan was fired because of the combination of events leading up to July 11, 1995, including his behavior problems and his two-day unapproved absence, along with his late return on that date. This reason is legitimate and nondiscriminatory, and there is no evidence that St. Jude has changed its story. Etukakpan bears the ultimate burden of producing evidence from which a reasonable trier of fact could conclude that St. Jude discriminated against him on the basis of his race or national origin. See Bogren v. Minnesota, 236 F.3d 399, 404 (8th Cir. 2000), petition for cert. filed, 69 U.S.L.W. 3750 (U.S. May 16, 2001) (No. 00-1729). This he has failed to do.

Etukakpan also argues that the district court erred in dismissing his retaliation claim. He argues that there is a link between his filing an EEOC charge alleging discrimination in December 1993 and the disciplinary warnings he received and his termination. The first warning he received after he filed the charge was issued in December 1994. The fourth warning resulted in his termination in July 1994, over one-and-a-half years after he filed the charge. This period of time between Etukakpan's filing of the EEOC charge and the warnings and termination does not support an inference of a causal connection. See Feltmann v. Sieben, 108 F.3d 970, 976-77 (8th Cir. 1997) (termination six months after engaging in protected conduct, by itself, is insufficient to support causal connection). After Etukakpan filed with the EEOC and before he received the warnings that ultimately led to his termination, St. Jude managers and supervisors received the memo complaining of his behavior. Interviews

-5-

with his co-workers revealed that he had a bad attitude, belittled others, and was abrasive.  St. Jude hired an outside firm to assess and attempt to solve the problems in Etukakpan's work group.  The district court stated that this effort was evidence of St. Jude's desire to maintain Etukakpan's employment, and we agree.  There is simply no evidence of a connection between the filing of the EEOC charge and the warnings and subsequent termination.

Etukakpan has not demonstrated error in the district court's careful and detailed analysis of the record.  We affirm the entry of summary judgment in favor of St. Jude.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.